UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBIN BRAY,

Plaintiff,

v.

Case No. 5:00-cv-36
Hon. Gordon J. Quist

COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,

Defendant.

_______________________________________/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) determining that plaintiff was no longer entitled to disability insurance benefits (DIB) or supplemental security income (SSI).[1]

**I. Procedural History**

Plaintiff was born on February 9, 1964 and graduated from high school (AR 111, 139).[2] Plaintiff stated that she became disabled on July 2, 1987 (AR 111). Plaintiff had previous employment as a pre-kindergarten teacher and electronic component tester (AR 415). The agency awarded plaintiff DIB and SSI benefits as an adjudicated alcoholic based upon applications in July

---

[1] The federal court's standard of review for supplemental security income cases "mirrors" the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).

[2] Citations to the administrative record will be referenced as (AR "page #").

1992 (AR 18). In June 1996, the agency informed plaintiff that her benefits would cease after December 1996 under the provisions of Pub. L. No. 104-121, 110 Stat. 847, § 105(b)(1) (1996) (AR 18). In enacting Pub. L. No. 104-121, Congress amended the Social Security Act to provide as follows:

> An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

Pub. L. No. 104-121, 110 Stat. 847, § 105(b)(1). *See generally*, *Hamblin v. Apfel*, 7 Fed.Appx. 449 (6th Cir. 2001) (discussing enactment and application of Pub. L. No. 104-121).

Plaintiff re-applied for DIB and SSI in December 1996 (AR 111, 336). She identified her disabling conditions as depression, a liver problem, head aches, trouble sleeping, upset stomach and back pain (AR 122). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo*. Plaintiff was not represented by counsel at the hearing (AR 367-93). In a decision entered on May 8, 1998, the ALJ found that plaintiff's benefits had been properly terminated because she would not be disabled if she stopped using alcohol (AR 39-47). Plaintiff sought judicial review of the unfavorable decision. On September 20, 2000, the court remanded her claim for additional administrative proceedings pursuant to sentence six of 42 U.S.C. § 405(g) because the hearing tape was lost. The Appeals Council remanded the matter to the ALJ for additional proceedings on November 28, 2000 (AR 18).

The ALJ held a supplemental hearing on March 28, 2001, at which time plaintiff was represented by counsel (AR 394-418). At the hearing, counsel acknowledged that plaintiff could perform substantial gainful employment as of March 13, 2000 and had been employed since that date (AR 396-97). The record reflects that plaintiff was working as a sales clerk at that time (AR 415).

In a decision entered April 13, 2001, the ALJ determined that plaintiff was not disabled because she could perform her past relevant work as an electronic component tester (AR 18-25). In his decision, the ALJ noted counsel's representation that plaintiff had been working since March 2000, and that "plaintiff could not be due benefits beyond a nine-month trial work period" (AR 18). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner.

This appeal involves whether plaintiff was disabled during a closed period commencing on January 1, 1997 (the date that the agency terminated benefits) and March 13, 2000 (the date that plaintiff returned to work).

**I. LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not

undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work

through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

**II. ALJ'S DECISION**

Plaintiff's claim failed at the fourth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity prior to March 2000 (AR 24). Second, the ALJ found that she suffered from severe impairments of: alcohol abuse; mood disorder; personality disorder; and borderline intellectual functioning (AR 21, 24). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 24). The ALJ decided at the fourth step that plaintiff had the residual functional capacity to perform light unskilled work (AR 24). In addition, the ALJ found that plaintiff's past relevant work as an electronic component tester did not require the performance of work-related activities precluded by her residual functional capacity (AR 24). The ALJ further concluded that plaintiff's medically determinable impairments did not prevent her from performing her past relevant work (AR 24). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act entered a decision denying benefits (AR 24-25).

## III. ANALYSIS

Plaintiff apparently raises two issues on appeal.[3]

**A. The ALJ ignored the conclusions of psychologist Jonathan Henry, M.D., and the IQ evaluators**.

Dr. Henry examined plaintiff in February 1997 at the agency's request (AR 192-96). Dr. Henry diagnosed plaintiff as suffering from "major depression, moderate to severe, without psychotic features," "alcohol dependence, now in remission," and "possible anxiety disorder NOS" (AR 195). The doctor also assigned plaintiff a Global Assessment of Functioning (GAF) score of 50.[4] The doctor was able to make this diagnosis because plaintiff had attained "complete sobriety for over six months" prior to the examination (AR 195). The ALJ noted that according to Dr. Henry, plaintiff: was pleasant; related in a relaxed and easy manner; had "clear, coherent and goal-directed speech; exhibited a mild level of affect blunting; and "no evidence of a thought disorder" (AR 20). The ALJ also noted that plaintiff spoke clearly and was pleasant and cooperative at a later examination with Anjanette M. Stoltz, M.D. (AR 20).

---

[3] Plaintiff did not set forth a "Statement of Errors, identifying and numbering each specific error of fact or law upon which plaintiff seeks reversal or remand" as required by the court's Order Directing Filing of Briefs.

[4] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id.* at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

The ALJ observed only one instance of hospitalization in the relevant time period, i.e., when plaintiff visited an emergency room in November 1997 in an intoxicated state with a blood alcohol level of .12% (AR 20). She was treated for detoxification and releasd (AR 20, 230). Plaintiff had no other medical treatment for the balance of 1997 through 2001, except for a psychological evaluation in June 1998 (AR 21). At that time, plaintiff achieved Verbal, Performance and Full Scale IQ's of 68, 73 and 67 respectively (AR 21).

Plaintiff contends that the ALJ ignored Dr. Henry's evaluation and the IQ test scores. Specifically, plaintiff contends that plaintiff's GAF score was work preclusive. The court disagrees. As an initial matter, Dr. Henry's diagnosis does not establish that plaintiff is disabled. "[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Commissioner of Social Security*, No. 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000), *citing Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988).

In addition, plaintiff's assigned GAF score of 50 lies within the 41 to 50 range, which indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), p. 34. Plaintiff apparently takes the position that this GAF score, assigned after a single examination, is a sufficient basis to award benefits. The Sixth Circuit, however, has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score. *See Rutter v. Commissioner of Soc. Sec.*, No. 95-1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996). *See generally, Hardaway v.*

*Secretary of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (per curiam) ("the determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence") (citation omitted).

Finally, plaintiff contends that her IQ scores support a disability finding. Contrary to plaintiff's contention, the evaluator did not find her IQ scores work preclusive. While plaintiff's scores were in the mildly mentally retarded range, the evaluator felt that the scores appeared to be an underestimate of her intelligence (given her past employment as a pre-kindergarten teacher and electric component tester) and concluded that her actual level of intellectual functioning was in the borderline range (AR 21, 329-30). Furthermore, the evaluator concluded that plaintiff's "relative strengths for tasks that require visual-motor and visual-spatial skills suggest that she would be best suited for unskilled labor in a factory setting, similar to her previous employment" (AR 330).

Substantial evidence supports the ALJ's decision denying benefits. Accordingly, plaintiff's contentions are without merit.

**B. The ALJ failed to provide any evidence of medical improvement to justify cessation of benefits.**

Next, plaintiff contends that the ALJ failed to meet her burden "to establish that claimant is capable of working" and demonstrate medical improvement as required under 20 C.FR. § 404.1594(a). Plaintiff's Brief at 5. Plaintiff's contention is without merit. Plaintiff's benefits were not terminated pursuant to a periodic review of benefits as discussed in § 404.1594(a). Rather, plaintiff was an adjudicated alcoholic whose benefits were terminated pursuant to legislative fiat. *See* Pub. L. No. 104-121. The implementation provisions of Pub. L. No. 104-121 included an eligibility redetermination for any individual that re-applied for benefits after termination.

In *Hamblin v. Apfel*, 7 Fed.Appx. 449 (6th Cir. 2001), the Sixth Circuit rejected the proposition that the ALJ must establish medical improvement in the re-applications filed by claimant whose benefits were terminated pursuant to Pub. L. No. 104-121:

> In this appeal, Hamblin first argues that the 1991 findings deserve res judicata deference. He cites to caselaw which suggests that a showing of medical improvement is necessary in order to displace earlier findings. *See Drummond v. Commissioner of Social Security*, 126 F.3d 837, 842 (6th Cir.1997) ("When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances."). Hamblin's argument is unavailing. When the Social Security Act was amended to disallow alcoholism as a contributing factor in assessing disability, Congress indicated that for those who had already been found disabled due to alcoholism, a new medical determination would be appropriate:
>
>> Within 90 days after the date of the enactment of this Act, the Commissioner of Social Security shall notify each individual who is entitled to monthly insurance benefits under title II of the Social Security Act based on disability for the month in which this Act is enacted and whose entitlement to such benefits would terminate by reason of the amendments made by this subsection. If such an individual reapplies for benefits under title II of such Act (as amended by this Act) based on disability within 120 days after the date of the enactment of this Act, the Commissioner of Social Security shall, not later than January 1, 1997, complete the entitlement redetermination (including a new medical determination ) with respect to such individual pursuant to the procedures of such title.
>
> Pub. L. No. 104-121, 110 Stat. 847, § 105(b)(1) (1996) (emphasis added). Due to Congress's amendment of the act, prior entitlements to benefits were terminated and new determinations were required to be assessed. A *new* medical determination could not be made if earlier findings were accorded res judicata status. The ALJ was correct to complete the five-step sequential evaluation process without deference to earlier findings.

*Hamblin*, 7 Fed. Appx. at 451.

Here, plaintiff re-applied for benefits. Contrary to plaintiff's contention, the ALJ was not required to demonstrate medical improvement pursuant to § 404.1594(a). *Id.* The ALJ properly

followed the five-step sequential evaluation process. Accordingly, plaintiff's claim of error should be rejected.

## IV. Recommendation

I respectfully recommend that the Commissioner's decision affirmed.

Dated: March 15, 2006

/s/ Hugh W. Brenneman, Jr.
Hugh W. Brenneman, Jr.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).